## State of Vermont v. Joseph W. Mountford

[769 A.2d 639]

No. 98-540

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 29, 2000

*Dale O. Gray*, Caledonia County State's Attorney, and *Alan M. Singer*, Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*David C. Sleigh* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

**Dooley, J.** Defendant Joseph Mountford appeals from a judgment entered in the Caledonia District Court on his conditional plea of guilty to a charge of possession of alcohol by a minor in violation of 7 V.S.A. § 657. Summoned by an early morning complaint of a loud party at defendant's home, police arrived to find the premises in

disarray and defendant visible through a window, apparently watching television. When defendant ignored their entreaties, the police entered without a warrant. Defendant now challenges the district court's refusal to suppress the evidence thereby acquired. We conclude that the police were justified in entering the premises on an emergency basis, but cannot determine from the record the subjective motive for their entry or whether they exceeded the scope of constitutionally permissible activity. Accordingly, we remand the matter for further evidence and fact finding.

After conducting an evidentiary hearing, the district court made the following findings. Early in the morning of March 15, 1998, the state police received a call from a resident of Lyndonville complaining of a loud party next door at a residence to which state police had been summoned twice before. The two officers who responded found no party in progress when they arrived, but they did notice beer cans and bottles strewn upon the lawn and front porch. They proceeded to the front porch and found the front door of the home open, the storm door closed and the glass in the upper portion of the storm door broken. Through the door they observed that beer bottles and other debris were strewn about the kitchen and that a telephone appeared to have been torn from the wall. They knocked on the door and announced themselves, receiving no response. The officers then looked through a window with a view into the living room and observed defendant seated on a couch and staring at a television. The officers sought to attract defendant's attention, first by shouting and knocking and then by shining their flashlights through the window into defendant's eyes. Defendant was unresponsive. The officers resumed knocking on the front door.

At this point, defendant stood and walked toward another room. He walked directly into a wall, stumbled backward and then stumbled into the other room, disappearing from the officers' sight. The officers resumed knocking and announcing their presence. Again receiving no response, and believing that defendant was extremely intoxicated and/or in need of medical attention, the officers entered the home and found defendant seated on the couch. They questioned defendant and learned that he was nineteen years of age, that he had been drinking, and that others had been present but had left. During the questioning, the troopers saw several more beer bottles and "illicit drug paraphernalia" scattered about the residence. One hour after they first arrived, they administered a breath test to defendant and found that he had a BAC of .211. They released him into the custody of a

roommate who arrived, after first giving him a citation to appear to answer a charge of possession of alcohol by a minor.

Defendant moved to suppress all evidence obtained by the officers as a result of their warrantless entry into his home. The district court conducted an evidentiary hearing and denied defendant's motion based on the so-called "community caretaking" exception to the constitutional requirement of a search warrant. See *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (noting that such functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"); *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.) (applying *Cady* and noting "essential role" of police in assisting persons in distress). The court found that "police who have probable cause, based on specific articulable facts, to believe that immediate entry is necessary to assist a person who may be in serious need of medical aid, may enter without a warrant." The court found that this test was met in this case. Defendant entered a conditional plea of guilty pursuant to V.R.Cr.P. 11(a)(2), reserving the right to appeal the denial of the motion to suppress, and this appeal followed.

Challenging the officers' warrantless entry into his home, defendant invokes both the Fourth Amendment to the United States Constitution and its analog, Chapter I, Article 11 of the Vermont Constitution. Defendant relies primarily on the warrant requirement, which we have described as the "first and foremost line of protection" afforded by these constitutional provisions. *State v. Morris*, 165 Vt. 111, 115, 680 A.2d 90, 93 (1996). "Requiring advance judicial approval before subjecting persons to police searches represents a balance in which an individual's privacy interest outweighs the burdens on law enforcement in obtaining a warrant." *Id.* Thus, the police are prohibited from deciding on their own, without the approval of a neutral judicial officer, to invade a person's privacy unless "exceptional circumstances" justify a departure from the warrant requirement. *Id.*

The State argues, however, that the warrantless intrusion of the police into defendant's apartment is justified by their reasonable concern that defendant was in need of emergency assistance. It argues further that once the officers entered the apartment, they could use what evidence was in plain view and interrogate defendant in the course of coming to his aid. The district court generally accepted this argument.

As an adjunct to, or part of, the community caretaking exception to the warrant requirement, courts have recognized an exception

for entry to render emergency assistance.* The United States Supreme Court recognized such an exception in *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978), and this Court did so in *State v. Connolly*, 133 Vt. 565, 571, 350 A.2d 364, 368 (1975), although neither case sets out the contours of the exception. The leading case laying out the requirements of the exception is *People v. Mitchell*, 347 N.E.2d 607 (N.Y. 1976), which held:

> [W]e think it necessary to articulate some guidelines for the application of the "emergency" doctrine. The basic elements of the exception may be summarized in the following manner:
>
> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Id.* at 609. Most courts that have considered this issue have accepted the *Mitchell* three-prong test, or some variation of it. See 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 6.6(a), at 392-93 (3d ed. 1996). See generally J. Decker, *Emergency Circumstances, Police Responses, and Fourth Amendment Restrictions*, 89 J. Crim. L. & Criminology 433, 440-41 (1999) (explaining

---

*We prefer to view the emergency assistance exception as separate from the community caretaking exception, although both involve the police operating outside of a criminal law enforcement role. As the Supreme Court made clear when it announced the latter exception to the warrant requirement in *Cady v. Dombrowski*, 413 U.S. at 441, the premise of the doctrine is "the extensive regulation of motor vehicles and traffic" and "the frequency with which a vehicle can become disabled or involved in an accident on public highways." Thus, "the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office" and, with regard to the former, police often find themselves engaged in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence related to the violation of a criminal statute." *Id.* The existence of a "community caretaking" exception to the warrant requirement is, at its heart, a "recognition of the distinction between motor vehicles and dwelling places." *Id.* at 447. Thus, *Cady* and its progeny, see *Colorado v. Bertine*, 479 U.S. 367 (1987), and *South Dakota v. Opperman*, 428 U.S. 364 (1976), and our own decision in *Marcello*, 157 Vt. at 657, 599 A.2d at 358, largely involve requirements properly applicable to automobile searches. By keeping the emergency assistance and community caretaking exceptions separate, we emphasize that we must view their elements separately.

three-pronged test similar to that in *Mitchell*). We accept the *Mitchell* standard, subject to refinement in future decisions and as explained below.

In accepting the *Mitchell* test, we acknowledge that it requires us to delve into the subjective motivation of police officers, an inquiry courts usually find inappropriate in Fourth Amendment cases. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"). Indeed, the United States Supreme Court has "never held, outside the context of inventory search or administrative inspection . . . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." *Id.* at 812; cf. *State v. Hollis*, 161 Vt. 87, 92-95, 633 A.2d 1362, 1365-66 (1993) (noting wide variety of circumstances in which courts have disregarded subjective motivations of officers, and explaining circumstances in which legal justification for arrest may support subsequent search, even if that justification does not comport with officer's actual motive for arrest); *State v. Towne*, 158 Vt. 607, 629-30, 615 A.2d 484, 496-97 (1992) (noting that majority of federal courts, in considering validity of arrest, have employed two-part test that limits Fourth Amendment analysis to examination of objective legality of arrest).

But in cases "addressing the validity of a search conducted in the absence of probable cause," such as administrative or inventory searches, the Supreme Court has indicated that examining the subjective motivations of officers is necessary to assure that the civil or quasi-criminal searches do not serve as a pretext for criminal investigations. *Whren*, 517 U.S. at 811-12; see *United States v. Cervantes*, 219 F.3d 882, 889-90 (9th Cir. 2000) (although *Whren* did not address whether motivation of officer is relevant to reasonableness of searches under emergency-aid doctrine, it suggests, by distinguishing between cases that require probable cause and those that do not, that motivation of officer is relevant whenever no probable cause exists, as is always true in emergency-aid cases); 1 LaFave, *supra*, § 1.4, at 21-22 (Supp. 2000) (given way in which *Whren* distinguished inventory and administrative searches, pretext-type claims will still be viable in cases involving searches made without probable cause).

The distinguishing feature of community caretaking and emergency assistance searches is that they are generated from a desire to aid victims rather than investigate criminals. Thus, as is the case with administrative and inventory searches, police are not required to

demonstrate probable cause to believe that a crime has taken place. As a result, most jurisdictions have adopted the three-part *Mitchell* test requiring courts to find that the primary subjective motivation behind such searches was to provide emergency aid. See *State v. Jones*, 947 P.2d 1030, 1037 (Kan. Ct. App. 1997) (citing jurisdictions that have adopted *Mitchell* test); *Salt Lake City v. Davidson*, 994 P.2d 1283, 1287 (Utah Ct. App. 2000) (same). But see *State v. Carlson*, 548 N.W.2d 138, 141-42 (Iowa 1996) (abandoning subjective-motivation prong in emergency assistance cases); *People v. Davis*, 497 N.W.2d 910, 921 n.12 (Mich. 1993) (declining to decide whether to adopt subjective element of emergency assistance doctrine). In doing so, the courts seek to assure that the emergency assistance doctrine is not used as a subterfuge to allow officers to search for evidence of crime under circumstances in which no probable cause existed. See *Gallmeyer v. State*, 640 P.2d 837, 842 (Alaska Ct. App. 1982); *People v. Ray*, 981 P.2d 928, 937-38 (Cal. 1999). For the same reasons, we agree that the subjective-motivation prong should be part of the test.

Having adopted the *Mitchell* test, we now turn to its application to the facts of this case. The parties' positions centered almost exclusively on the first element of the *Mitchell* test, with defendant arguing that there was no real emergency and the State arguing that there was. Courts have developed various formulations of this element, emphasizing particular aspects of an objective test. See *People v. Amato*, 562 P.2d 422, 424 (Colo. 1977) (use of emergency doctrine "must involve an immediate crisis and the probability that assistance will be helpful"); *Commonwealth v. DiGeronimo*, 652 N.E.2d 148, 154 (Mass. App. Ct. 1995) ("authorizes warrantless entry when a police officer . . . reasonably believes that a person within the dwelling is in need of immediate assistance because of an imminent threat of death or serious injury"); *City of Troy v. Ohlinger*, 475 N.W.2d 54, 57 (Mich. 1991) ("Where the police have probable cause, based on specific, articulable facts, to believe that immediate entry is necessary to assist a person who may be in serious need of medical aid, they may enter without a warrant."); *State v. Follett*, 840 P.2d 1298, 1302 (Or. Ct. App. 1992) (police must "have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life" and "emergency must be a true emergency"); *La Fournier v. State*, 280 N.W.2d 746, 749 (Wis. 1979) (justification for emergency exception "is the compelling need for immediate action by peace officers to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance").

For purposes of this case, we do not need to refine the first element beyond its description in *Mitchell*. We do acknowledge, however, two additional conflicting considerations. First, we must be careful when we evaluate, by hindsight, actions taken by police based on an immediate reaction to the circumstances that faced them. As Chief Justice (then Circuit Judge) Burger explained: "[T]he business of policemen and firemen is *to act*, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963). Thus, we should be deferential in evaluating a police decision that intervention was necessary in response to an apparent emergency. See generally Decker, *supra*, at 458. On the other hand, "a warrantless search is considered unreasonable unless justified, [and] the burden is on the prosecution to show that the search falls into one of the exceptions to the Fourth Amendment search warrant requirement." *State v. Ibey*, 134 Vt. 140, 144, 352 A.2d 691, 693 (1976); accord *State v. Blades*, 626 A.2d 273, 278 (Conn. 1993) (State has "burden of demonstrating that a warrantless entry falls within the emergency exception").

■ We conclude that, based on the information before them, the officers could reasonably believe that defendant was in need of immediate, emergency medical attention. As defendant argues, we do not believe that either the knowledge that defendant was drunk, see *DiGeronimo*, 652 N.E.2d at 155-56; *Bray v. State*, 597 S.W.2d 763, 766, 768 (Tex. Crim. App. 1980) (presence of man who was "very intoxicated" as a result of injection of some type of narcotics not an emergency to warrant entry), or the failure of defendant to open the door, see *State v. Geisler*, 610 A.2d 1225, 1236-37 (Conn. 1992), is sufficient to authorize emergency intervention. In this case, however, there was more than defendant's apparent drunkenness. Defendant was alone, without anybody to assist him should he need it. His lack of responsiveness to the officers' knocking and yelling, and to the flashlight beam directly in his eyes, indicated a very serious level of impairment. Although defendant could walk, he walked directly into a wall, which reinforced the officers' concern about his impairment. We conclude that the circumstances present here would lead a reasonable officer to be concerned about alcohol poisoning or risk of serious accidental injury. See *Howes v. Hitchcock*, 66 F. Supp. 2d 203, 216 (D. Mass. 1999) (unsupervised teenage drinking party created "dangers of alcohol poisoning, accidents, and violence associated with

such gatherings, as well as the risk to public safety posed by the possibility of the partygoers getting into their cars"); *Ohlinger*, 475 N.W.2d at 56-57 (entry into dwelling justified where flashlight shined through bedroom window showed defendant, who had earlier left scene of auto accident holding his head, bleeding and not moving); *State v. District Court*, 577 P.2d 849, 852-53 (Mont. 1978) (view through open door of person slumped over kitchen table, not moving but with hair dryer on and in his hand, sufficient to allow entry into dwelling); *State v. Sanders*, 506 P.2d 892, 894 (Wash. Ct. App. 1973) (sight through window of defendant "standing in a crouched position, swaying back and forth," combined with defendant's inability to state telephone number to operator, was sufficient to allow warrantless entry). Therefore, entering the home without a warrant could be lawful on these facts, as long as the other elements of the *Mitchell* test were satisfied.

We cannot, however, readily determine, based on the record before us on appeal, that the second and third elements of the *Mitchell* test were met. The court made no explicit finding that the officers' decision to enter the dwelling was motivated primarily by the desire to assist defendant. See *Mitchell*, 347 N.E.2d at 609. Instead, the court returned to the first element, the objective standard, to conclude that the officers "had good reason to enter the premises for the purpose of rendering aid or assistance." We can understand why the court made no finding on the subjective second element. The only evidence before the court was the affidavit of one of the officers and the testimony of both of them at the suppression hearing. Neither officer was asked why he entered the dwelling, and as discussed below, there is little evidence of what the officers did after they entered. The evidence indicates that they entered the dwelling about five minutes after arriving, and administered an alcosensor test to defendant an hour after arriving. There is no indication what they did in the intervening fifty-five minutes except to interrogate defendant. See 3 LaFave, *supra*, § 6.6(a), at 402 ("Any conduct within by the officer which is in any way inconsistent with the purported reason for the entry is a just cause for healthy skepticism . . . .).

Similarly, we have inadequate evidence and findings on the third element of the standard, that there must be a reasonable basis to associate the emergency with the place to be searched. This element of the *Mitchell* test implements the constitutional requirement that "the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement." *Cupp v. Murphy*, 412 U.S. 291, 295 (1973).

In this case, the officers found beer bottles and evidence of marijuana use in the living room where defendant was found and in other parts of the house. Assuming a lawful entry, the physical evidence found in the living room was in plain view and could properly be seized. See *People v. Amato*, 562 P.2d at 423; *State v. Blades*, 626 A.2d at 278 (evidence in plain view during course of search pursuant to "legitimate emergency activities" can be seized). But we have no evidence to judge whether the scope of the search was lawfully extended to the remainder of the house. On remand, the answer to this question will again depend on whether the officers were required to enter the remainder of the house to respond to the emergency. Or, put another way, whether the scope of the officers' activities exceeded their justification for being there.

This case, however, involves more than the physical evidence described above. Defendant also moved to suppress the fruits of his interrogation and the result of the alcosensor test administered while the officers were in the house. Again, this is an issue of scope. The fruits of the interrogation and alcosensor test are analogous to physical evidence obtained from another room in the house. Although different from physical evidence, the standard is the same — if the evidence is not sufficiently connected to the rendering of emergency assistance, it must be suppressed. See *State v. Geisler*, 610 A.2d at 1231 n.13, 1237; *New York v. Harris*, 495 U.S. 14, 20 (1990). This holding is consistent with those of other courts. See *United States v. Brand*, 556 F.2d 1312, 1317 n.9 (5th Cir. 1977) (police "must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search"); *Ohlinger*, 475 N.W.2d at 57 ("The officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance."); *Lubenow v. North Dakota State Highway Comm'r*, 438 N.W.2d 528, 533 (N.D. 1989) (Levine, J., concurring) (emergency doctrine "must be strictly construed to keep the intrusion as limited as possible, so that law enforcement officers are not permitted to invoke the doctrine capriciously to circumvent the warrant requirement to seize evidence they anticipate discovering"); see also 3 LaFave, *supra*, § 6.6(a), at 401 ("Once it is determined that the suspicion which led to the entry is without substance, the officers must depart rather than explore the premises further."). We cannot determine from the evidence and the court's findings whether suppression of fruits of the interrogation or results of the alcosensor test are justified.

Although it is clear that the court's findings do not cover all the elements of the *Mitchell* standard, it is less clear what our remedy should be. As we stated above, the prosecution had the burden to show that an exception to the warrant requirement applied, but its evidence failed to make a complete showing. Defendant sought to suppress any evidence gathered inside defendant's dwelling, but its legal memoranda relied only on the lack of an emergency to justify entry into the dwelling.

As we indicated at the outset, this is a case of first impression, and the parties have failed to anticipate what governing legal standards we would require. In such circumstances, we conclude that the appropriate remedy is a remand for factual development and findings consistent with this opinion. See *State v. Malinowski*, 148 Vt. 517, 523-24, 536 A.2d 921, 925 (1987).

*The decision of the district court denying defendant's motion to suppress evidence gathered from the warrantless entry of defendant's dwelling is reversed and remanded for further proceedings consistent with this opinion.*