2004 VT 65

**STATE of Vermont v. Talmage JESTICE**

[861 A.2d 1060]

No. 03-093

¶ 1. August 18, 2004. Defendant, who entered a conditional guilty plea to possession of cocaine, argues that the district court erred in denying his motion to suppress evidence obtained from an unjustified seizure. We reverse.

¶ 2. At approximately two o'clock in the morning on August 8, 2002, a uniformed Middlebury police officer on routine patrol in a fully marked police cruiser entered a trailhead parking lot and observed a young man, defendant, and a young woman sitting in a parked car. The officer pulled his police cruiser nose-to-nose to the car, leaving his engine running and headlights on. He testified that his cruiser "was essentially blocking the exit." After calling in his location and running a check on the vehicle's plates, the officer approached the passenger's side of the car where defendant was sitting, shone his flashlight inside the car, and asked the couple what they were doing. They responded that they were not doing anything. Noticing a razor blade on defendant's thigh, the officer asked defendant what it was for. When defendant feigned ignorance, the officer asked him to hand it over. Defendant did

so, at which point the officer noticed a white powder on the edge of the razor blade. The officer then asked defendant "where's the rest of it?" and defendant handed him a small box containing cocaine.

¶ 3. At the trial court proceedings, defendant filed a motion to suppress, arguing that the State's evidence was the product of an unlawful seizure. The district court denied the motion, ruling that the officer's initial approach of the parked car was not a stop, and that in any event a stop would have been justified because it was late at night and there was a man and a woman alone in the car with no one else around. In the court's view, given this situation, the officer had good reason both to investigate potential criminal violations and to engage in community caretaking duties. The court also concluded that reasonable persons in the couple's position would have felt free to leave because there was enough room for them to back up their car and maneuver it around the cruiser. Further, according to the court, once the officer approached defendant's vehicle, he had a reasonable basis to assume that the razor blade, which was in plain sight, was being used for drugs and could be used as a weapon. Therefore, the court determined that the officer was justified in questioning the couple further. Finally, the court concluded that defendant consented to the officer's request to hand over the razor blade and the box containing the cocaine.

¶ 4. On appeal, defendant argues that the encounter amounted to a seizure, and that there was no justifiable basis for the seizure. He also contends that, even if the officer was justified in detaining him, he did not consent to turning over the cocaine to the officer, but rather submitted to the officer's show of authority. We agree that there was an unjustified seizure and, therefore, reverse the trial court's order denying defendant's motion to suppress. See *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.) (we apply clearly erroneous standard to trial court's historical facts, but review de novo its ultimate legal conclusion on motions to suppress).

¶ 5. "A 'stop' is [a] shorthand way of referring to a seizure that is more limited in scope and duration than an arrest," and thus "police need not force or signal a vehicle to the side of the road to effect a stop of persons in the vehicle." *State v. Burgess*, 163 Vt. 259, 261, 657 A.2d 202, 203 (1995). "Courts have long held that a show of authority tending to inhibit a suspect's departure from the scene is sufficient to constitute a stop, even though the vehicle is already stopped at the time of an approach by police." *Id.* While merely approaching a person seated in a parked car does not, in and of itself, constitute a seizure, "activity which inhibits a person's freedom of movement does." *Id.* The question in determining whether an encounter between a citizen and police constitutes a seizure is whether, given all of the circumstances, the encounter is so intimidating that a reasonable person would not feel free to leave without responding to the officer's requests. See *State v. Paquette*, 151 Vt. 631, 634, 563 A.2d 632, 635 (1989). This test is "necessarily imprecise" because it focuses on the interaction as a whole rather than the particular details of the encounter in isolation. See *People v. Cascio*, 932 P.2d 1381, 1386 (Colo. 1997) (en banc).

¶ 6. The facts of this case pose a close question as to whether there was a seizure. Defendant and his companion were parked alone late at night in a trailhead parking lot. The uniformed officer pulled his marked police cruiser into the lot and parked nose-to-nose with the couple's car, leaving the engine running and the lights on. The officer testified that he essentially blocked the exit to the lot, but he also testified that a second car could maneuver past his patrol car to get out.

After calling in his position, the officer approached the passenger side of the couple's car and asked them what they were doing. The evidence indicates that the couple could have avoided the officer only by backing up and maneuvering their car around both the patrol car and the officer before squeezing through the exit.[1] Both defendant and his companion testified that they had difficulty seeing because of the bright lights of the patrol car shining in their faces. Under these circumstances, we conclude that the officer exhibited a show of authority tending to inhibit defendant from breaking off the encounter. See *Burgess*, 163 Vt. at 261, 657 A.2d at 203.

¶ 7. Although not necessarily controlling, when a police cruiser completely blocks a motorist's car from leaving, courts generally find a seizure. *Cascio*, 932 P.2d at 1387-88 (position of patrol car relative to motorist's car is important consideration in determining whether seizure exists; if police car wholly blocks motorist's ability to leave, courts have held that reasonable person would not feel free to leave). Here, the fact that it was possible for the couple to back up and maneuver their car past the patrol car and out of the trailhead parking lot does not convince us that this was a consensual encounter rather than an investigatory stop or that the officer's show of authority was insufficient to make a reasonable person feel that he was not free to leave.

---

[1] The dissent complains that we have drawn from the evidence a version of the facts different from what the trial court found. Our version of the facts is the same as that found by the trial court — the police cruiser did not completely block defendant's exit, but his companion would have had to back up and maneuver her vehicle around the cruiser to avoid the officer.

¶ 8. Nor are we persuaded by the cases that the dissent cites in support of its position. In *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994), an agent of the Drug Enforcement Administration (DEA) parked his unmarked car so as to partially block a suspect's car, which was parked in front of a shop in downtown Honolulu. The officer approached the suspect's car, identified himself as a DEA agent, and asked the suspect if he would answer a few questions. The court determined that these circumstances amounted to a consensual encounter rather than an investigatory stop. See *id.* at 1430-31. The circumstances in *Kim* do not encompass the show of authority present in this case, where a uniformed officer parked his marked patrol car nose-to-nose against a couple's car late at night in a darkened trailhead parking lot with no one else around, left the cruiser's headlights shining in their faces as he approached them, and asked them what they were doing. In *Cascio*, the other case relied on by the dissent, two deputies approached a van parked just off a narrow mountain road in a no parking area. The deputies parked their patrol car approximately ten to twenty feet behind the van and trained their spotlight on the vehicle. Noting that the circumstances presented a "close question" as to whether the encounter rose to the level of an investigatory stop, 932 P.2d at 1385, the court found a consensual encounter rather than a seizure because the defendants' egress was "only slightly restricted" by the patrol car and because the officers engaged the defendants in a casual and friendly manner. *Id.* at 1387-88. Our case is also a close question, but the subtle differences noted above lead us to conclude that the encounter here rose to the level of an investigatory stop, and thus a seizure.

¶ 9. We now consider whether the seizure was justified. A warrantless investigatory seizure is justified if the

officer had "specific and articulable facts, taken together with rational inferences from those facts," that would "warrant a reasonable belief that a suspect is engaging in criminal activity." *State v. Caron*, 155 Vt. 492, 499, 586 A.2d 1127, 1131 (1990); see *State v. Crandall*, 162 Vt. 66, 70, 644 A.2d 320, 323 (1994). Here, the officer's statement that, while he was pulling his cruiser into the parking lot, he observed defendant lean forward as if to place something on the floor of the vehicle did not create a specific and articulable basis for suspecting that a crime was taking place. As the officer readily acknowledged at the hearing on the motion to suppress, defendant could have been reaching down for a wide variety of reasons having nothing to do with criminal activity.

¶ 10. Suspicion of criminal conduct is not the only possible justification for a seizure, however. *State v. Campbell*, 173 Vt. 575, 575-76, 789 A.2d 926, 927-28 (2001) (mem.). "A seizure does not require suspicion of criminal conduct where police officers are acting under the community caretaking doctrine" to assist persons in distress and to maintain public safety. *Id.* at 576, 789 A.2d at 928. "A police officer acting under the community caretaking doctrine must have 'specific and articulable facts' that led him to reasonably believe the defendant was in need of assistance." *Id.* (quoting *State v. Marcello*, 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.)). Here, the officer testified that it was his practice to make sure everything is okay when he encounters a male and a female in a remote location at night. We conclude that the officer's practice cannot substitute for specific and articulable facts supporting the seizure. Compare *Burgess*, 163 Vt. at 262, 657 A.2d at 204 (seizure not justified by car being parked in designated rest area on cold winter night) with *Campbell*, 173 Vt. at 576, 789 A.2d at 928 (seizure justified by defendant flashing lights at

passing officer from car parked off side of road on stormy night) and *Marcello*, 157 Vt. at 658, 599 A.2d at 358 (seizure justified by excited utterance of passing motorist informing officer that defendant needed assistance). The evidence did not suggest that the area in which the encounter occurred was so remote as to create a reasonable belief that one or both of the people in the car might have been in danger. Indeed, a second officer who arrived at the scene testified at the motions hearing that the trailhead parking lot was about one-quarter of a mile from the state highway, that the police routinely checked the lot on patrol, and that the lot was "frequented by people who do various things from just parking to whatever else in the privacy of the area." No evidence suggested that either person in the car was in any sort of trouble when the officer arrived on the scene.

¶ 11. In short, there was a seizure in this case, and the seizure was not justified by suspicion of criminal wrongdoing or community caretaking. Accordingly, the district court erred by not granting defendant's motion to suppress.

*Reversed and remanded.*

¶ 12. **Dooley, J.,** dissenting. As Professor Wayne LaFave has accurately observed, "if the ultimate issue is perceived as whether the suspect 'would feel free to walk away,' then virtually all police-citizens encounters must in fact be deemed to involve a Fourth Amendment seizure." 4 W. LaFave, Search and Seizure § 9.3(a), at 99 (3d ed. 1996) (quoting *State v. Evans*, 517 P.2d 1225, 1229 (Or. Ct. App. 1974)). In continuing down the line of labeling less and less intrusive interactions as seizures, the majority has literally applied the wording of the Fourth Amendment test, but not its content as it has evolved in decisions from the United States Supreme Court and other courts. As a result, it has ignored

Professor LaFave's characterization of its policy and removed from law enforcement desirable options to protect vulnerable citizens. For this reason, I dissent.

¶ 13. I think that the correct line between appropriate police-citizen interaction and a police seizure of a citizen can be found in two opinions of the United States Supreme Court, *Florida v. Bostick*, 501 U.S. 429 (1991), and *United States v. Drayton*, 536 U.S. 194 (2002), and that line would require us to affirm the decision of the trial court in this case. Both *Bostick* and *Drayton* involve police encounters with bus passengers under programs in which law enforcement officials board busses during scheduled depot stops and interrogate passengers and request to search their luggage for drugs. In *Bostick*, a passenger on whom the officers found drugs challenged the practice, and the Florida Supreme Court found the practice per se unconstitutional because the passengers were not realistically free to leave the bus to avoid the questioning and searches. 501 U.S. at 433. In an argument comparable to that made here "Bostick insist[ed] that this case is different because it took place in the cramped confines of a bus. A police encounter is much more intimidating in this setting, ... because police tower over a seated passenger and there is little room to move around." *Id.* at 435. The Supreme Court disagreed noting the passengers were not free to leave because they were on a bus that was departing from the depot, and not because of law enforcement coercion. *Id.* at 436-37. Thus, the test was whether the passengers were free to decline the request to search "or otherwise terminate the encounter." *Id.* The Court held the test required the Florida courts to consider all circumstances, including the facts that the officers did not use their firearms and they specifically advised each passenger that consent to search was voluntary, and remanded for that purpose. *Id.* at 437-38.

¶ 14. *Drayton* involved almost the same facts except that the officer did not advise the passenger that consent to search was voluntary. 536 U.S. at 197. Also in *Drayton*, three officers were stationed on the bus — one at the rear, one at the entrance and the last interrogating the passengers but not blocking the aisle. The officer asking questions was twelve to eighteen inches from the passenger. The Supreme Court upheld the district court's finding that the passengers were not seized:

> The officers gave the passengers no reason to believe that they were required to answer the officers' questions. When Officer Lang approached respondents, he did not brandish a weapon or make any intimidating movements. He left the aisle free so that respondents could exit. He spoke to passengers one by one and in a polite, quiet voice. Nothing he said would suggest to a reasonable person that he or she was barred from leaving the bus or otherwise terminating the encounter.
>
> ... There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice.

*Id.* at 203-04.

¶ 15. We must look at the seizure standard based on the assumption that the citizen who interacts with the police is innocent of criminal behavior. See *Bostick*, 501 U.S. at 438. We cannot base our decision on the natural inclination of citizens to cooperate with police requests. See *People v. Melton*, 910 P.2d 672, 677 (Colo. 1996).

¶ 16. Of course, the criticism of *Drayton* and *Bostick* is that the test espoused does not match the actions of the police upheld in the decisions. See generally J. Nadler, *No Need to Shout: Bus Sweeps and the Psychology of Coercion*, 2002 Sup. Ct. Rev. 153. Whatever the general language used, the decisions of the United States Supreme Court continue to move "away from labeling such minor restrictions on individual movement as seizures." *State v. Burgess*, 163 Vt. 259, 263, 657 A.2d 202, 204 (1995) (Dooley, J., dissenting). *Drayton* and *Bostick* give little weight to the kind of considerations the majority has focused on here, particularly the restrictions on movement, and instead focus on the factors itemized in *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980):

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. . . . In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

(Citations omitted.)

¶ 17. The majority ignores the *Mendenhall* factors, apparently seeing this case as the logical extension of *Burgess*, in which this Court held that one factor alone — an officer's use of official, flashing blue lights to approach a parked automobile — created a seizure because the lights tend "to inhibit a suspect's departure from the scene." 163 Vt. at 261,

657 A.2d at 203. *Burgess*'s departure from a weighing of all the factors is understandable, as many cases have held, because state law typically requires a motorist to remain stopped when the flashing emergency lights are illuminated. See *Hrezo v. State*, 780 So. 2d 194, 195 (Fla. Dist. Ct. App. 2001); *State v. Mireles*, 991 P.2d 878, 880 (Idaho Ct. App. 1999); *State v. Morris*, 72 P.3d 570, 577 (Kan. 2003). There is no equivalent reason to ignore all the factors, particularly those outlined in *Mendenhall*, in this case and to give controlling weight to only the two factors considered by the majority.

¶ 18. The majority also draws from the evidence its version of the facts and ignores the findings of the trial judge. The court found:

> Nothing was blocking her way initially when the officer was standing by the car and she could have pulled behind him in reverse and then gone forward directly out of the lot *and that she was not trapped in there in any fashion by where the officer's car was parked or by where he was standing.* So I don't conclude that a reasonable person would have felt that they could not get out of that lot if they chose to do so and if they had said "I'd rather not answer any questions."

(Emphasis added.) We are bound by the trial court's finding of the underlying facts. See *State v. Lawrence*, 2003 VT 68, ¶¶ 8-9, 175 Vt. 600, 834 A.2d 10 (mem.). By relying on some of the evidence, rather than the findings, the majority overstates the degree to which the freedom of movement of the vehicle was impeded. Although we review the trial court's conclusion de novo, we must do so consistent with the findings.

¶ 19. The proper analysis, based on the findings made by the trial court, is demonstrated by two leading cases from other jurisdictions that analyze in some detail the circumstances where the officer's vehicle is parked to partially block the defendant's vehicle, what the trial court found occurred here. The first is *United States v. Kim*, 25 F.3d 1426 (9th Cir. 1994), in which a DEA agent positioned his unmarked car to partially block a drug suspect's car containing defendant while it was parked on the street in front of a store. The appeals court upheld the district court ruling that no seizure had occurred. After reviewing the general law, the court addressed defendant's argument that the partial blocking of his car created a seizure:

> To be sure, where officers detain an already stationary suspect by hindering his future as opposed to ongoing progress, that they did not stop the suspect as the term is commonly understood does not foreclose inquiry into whether their conduct constitutes an investigatory stop. However, that [the officer] partially blocked Kim's egress with his automobile informs but does not alter our conclusion that Kim was not stopped in the constitutional sense before his surrender of the vial setting the foundation for the subsequent search .... The phrasing of [the officer's] request for permission to question Kim left open the possibility of a refusal and the positions in which DEA agents were posted did not entirely bar Kim's egress.

*Id.* at 1431 (citations omitted); see *United States v. Bates*, No. 01-30199, 2002 WL 31119844, at *1 (9th · Cir. Sept. 25, 2002); *United States v. Summers*, 268 F.3d 683, 687 (9th Cir. 2001); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1188-89 (D. Kan. 2003); *United States v. Baldwin*, No. Cr.3:97CR188(AHN), 1998 WL 563851, at *3 (D. Conn. June 29, 1994).

¶ 20. The second, *People v. Cascio*, 932 P.2d 1381 (Colo. 1997), is even more relevant because it involves facts very similar to those in this case. The officers in *Cascio* came across a van parked off an unpaved national forest road after dark. They parked their vehicle to .partially block the van and illuminated it .with a spotlight. After questioning the occupant, defendant, the officers found drugs. *Id.* at 1383. The Colorado Supreme Court discussed the general law and noted that where a vehicle is totally blocked the courts have found a seizure. *Id.* at 1387. It held that the law was different when the vehicle was partially blocked so "that the Cascios would have been able to leave by maneuvering their van in a manner akin to parallel parking."[2] *Id.* In that case, defendant was "not physically restrained from departing," and the partial

---

[2] The majority's attempt to distinguish the facts in *Cascio* is unconvincing. The van in that case "was parked a few feet away from ... boulders," 932 P.2d 1381, 1383 (Colo. 1997), when the police car pulled ten to twenty feet in back of it and shined its spotlight on the occupants. In order to leave, the van had to back around the police car "in a manner akin to parallel parking," and then go forward. *Id.* at 1387. Based on the facts found by the trial court here, the driving necessary to exit from the trailhead parking lot was similar, if not identical. Apparently, the majority finds that headlights shined into a car are more intrusive than a spotlight shined on the occupants. The majority calls this a subtle distinction. I would call it a distinction with no relevant difference.

blocking should be considered only one factor to be weighed in the totality of the circumstances. *Id.* The court found no seizure with the following analysis:

> While this factor [the partial blocking], standing alone, is not controlling, the totality of the circumstances surrounding the encounter between the Cascios and the sheriff's deputies does not support a finding that the encounter was an investigatory stop rather than a consensual encounter. Although there were two deputies present, they did not act in a threatening manner. In particular, the deputies did not display their weapons, physically touch the Cascios, surround the Cascios, or use an intimidating tone of voice. In fact, the colloquy between the parties was rather mild-mannered. Deputy Rosenbaum's approach was non-threatening. "His greeting to the Cascios — Hi guys. How are you doing?" — was casual and friendly. Deputy Rosenbaum testified that he pulled over with the intention of "contacting" the Cascios. Deputy Getskow testified that he and Deputy Rosenbaum "were told to investigate vehicles that were off the road, and that was basically for welfare checks, and so forth." Indeed, as we noted in *People v. Chaves*, 855 P.2d 852 (Colo. 1993), police officers have various roles and multiple tasks in addition to those related to criminal offenses, including some that are civil in nature.

*Id.* at 1387-88 (citations omitted).

¶ 21. In addition we note that in the numerous cases where officers have used lights, other than official flashing emergency lights, to illuminate the interior of a parked car, the courts have not given controlling significance to that factor. *Adams v. State*, 758. S.W.2d 709, 712 (Ark. Ct. App. 1988) (spotlight); *People v. Paynter*, 955 P.2d 68, 73 (Colo. 1998) (spotlight); *State v. O'Neill*, 62·P.3d 489, 497 (Wash. 2003) (spotlight and flashlight). Indeed, *Cascio*, like this case, involved both partial blocking and a spotlight to illuminate the interior of the parked vehicle.

¶ 22. The other relevant factors in this case are all inconsistent with finding a seizure. There was only one officer. He did nothing threatening. He did not bring his weapon out. He did not touch anyone. There was no evidence that he used an intimidating or threatening tone of voice. He simply asked the occupants of the vehicle what they were doing. Based on these factors primarily, I would hold that no seizure occurred here.

¶ 23. I agree with the majority that our precedents require that a seizure for community caretaking purposes be based on specific and articulable facts supporting the seizure and would agree normally that such a justification for the seizure before us cannot be upheld. But I also agree that the degree of intrusion is minimal compared to the kind of risk that motivated the officer to inquire about the circumstances of a couple in a vehicle in a very remote place at 2 A.M. in the morning.

¶ 24. As the majority continues to expand what conduct will be considered a seizure when a police officer approaches a stopped vehicle after dark, we are left with only two options: the officer will approach the vehicle giving no visible sign that the person doing so is a police officer rather than a robber or other person engaged in criminal conduct; or the officer will ignore the vehicle. The first option greatly places at risk the safety of the officer and the occupants of the vehicle. The latter eliminates the ability of the officer to protect public

safety under circumstances that should warrant some inquiry. See *State v. Walters*, 934 P.2d 282, 288 (N.M. Ct. App. 1997) ("We are loathe to discourage community caretaker stops or to make them hazardous for motorists or the police."); *State v. Mireles*, 991 P.2d at 881-82 (same). I cannot agree that these should be the only options and therefore dissent.

¶ 25. I am authorized to state that Justice Reiber joins in this dissent.