925 A.2d 999 (2007)
2007 VT 20
STATE of Vermont
v.
Michael St. MARTIN.
Nos. 05-561, 05-562.
Supreme Court of Vermont.
March 14, 2007.
*1000 Present: REIBER, C.J., and DOOLEY, JOHNSON, SKOGLUND and MORSE, Associate Justice (Ret.), Specially Assigned.

ENTRY ORDER
¶ 1. The appeal before us originates from a motor-vehicle stop in response to defendant's premature activation of his high-beam headlights. The State contends that the state trooper's action in stopping defendant falls within the community caretaking exception to the warrant requirement, and that the trial court therefore erroneously granted defendant's motion to suppress the evidentiary fruits of the stop. We disagree and affirm.
¶ 2. The relevant facts are brief. While patrolling eastbound on Route 302 in Ryegate, Vermont on the evening of March 5, 2005, a state trooper observed defendant's vehicle approaching from the opposite direction. Just as defendant was passing the trooper, he activated his vehicle's high-beam headlights, momentarily blinding the trooper. The trooper then turned his cruiser around and made a stop of the vehicle. He approached the vehicle and identified the driver as defendant. At that point, the trooper made observations of defendant's appearance and behavior that led to DUI processing.
¶ 3. On March 21, 2005, defendant was arraigned on a charge of felony DUI; he had three prior DUI convictions. The preliminary civil suspension hearing was conducted on the same day. On May 3, 2005, defendant filed a motion to suppress in both matters, claiming that the underlying stop that led to the DUI charge was an unlawful seizure under the federal and state constitutions. The hearing on the motion and civil suspension merits hearing were combined and took place on August 9, 2005.
¶ 4. In December 2005, the court granted defendant's motion to suppress, finding that the motor-vehicle stop was neither justified by reasonable suspicion of criminality nor as community caretaking, and entered judgment for defendant in the civil suspension proceeding. On appeal, the State challenges only the court's determination that the stop was unwarranted under the trooper's community caretaking function and was therefore unconstitutional.
¶ 5. Our review of a motion to suppress is multifaceted, as it "involves a mixed question of fact and law." State v. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. We "accept the trial court's findings of fact unless they are clearly erroneous"; however, we review de novo the legal question of whether those facts justified a stop under the community caretaking exception to the warrant requirement. Id.
¶ 6. We first addressed the community caretaking exception in State v. Marcello, stating that in certain circumstances, "police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out `community caretaking' functions to enhance *1001 public safety." 157 Vt. 657, 658, 599 A.2d 357, 358 (1991) (mem.). Such an intrusion, however, must be objectively reasonable and predicated upon specific, articulable facts. Id. In the cases where we have upheld motor-vehicle stops under the community caretaking exception, the law enforcement officers undertaking the stops have done so in response to a perceived emergency or indication of imminent threat to specific individuals. See State v. Campbell, 173 Vt. 575, 576, 789 A.2d 926, 928 (2001) (mem.) (stop warranted where defendant parked in otherwise empty lot on stormy night flashed lights at marked police cruiser); Marcello, 157 Vt. at 658, 599 A.2d at 358 (stop upheld where motorist told state trooper to stop defendant's vehicle because defendant needed assistance). Conversely, we have been wary of applying the community caretaking exception to cases where the facts lacked indicia of danger or distress. See State v. Jestice, 2004 VT 65, ¶ 10, 177 Vt. 513, 861 A.2d 1060 (mem.) (stop unconstitutional where police officer engaged in routine practice of stopping lawfully parked vehicles with a male and female occupant); State v. Burgess, 163 Vt. 259, 263, 657 A.2d 202, 204 (1995) (stop invalidated where defendant was legally parked on shoulder on cold winter night).
¶ 7. On the facts of this case, as found by the trial court, we can discern no legitimate law enforcement or community caretaking function fulfilled by a motor-vehicle stop of defendant. While defendant prematurely activated his high-beam headlights when passing the trooper, Vermont law does not penalize such action. The State countered defendant's motion to suppress by arguing that the trooper reasonably believed that the public safety was endangered by defendant's high-beam use; however, the only fact underlying its conclusion was the trooper's testimony that the headlights were "kind of blinding." Furthermore, the trooper testified that he did not recall encountering other vehicles on the roadway at the time he initiated the stop, and therefore, presumably, could not articulate a specific threat averted or ameliorated by stopping defendant. We have on several occasions, as the State contends, taken notice that headlights (even conventional low beams) can be distracting to passing drivers on dark roads, but we fail to understand why this momentary impairment, standing alone, motivated the trooper to invoke his community caretaking responsibility. See, e.g., Labrecque v. Am. News Co., 115 Vt. 305, 307, 58 A.2d 873, 874 (1948) (taking judicial notice that in meeting a vehicle with bright headlights, a driver's vision is impaired). Even were we to agree with the State that the trooper subjectively perceived a threat to the public, however, a law enforcement officer's motivation for stopping a vehicle must be objectively reasonable. Marcello, 157 Vt. at 658, 599 A.2d at 358.
¶ 8. Despite the State's contention at oral argument that defendant's misuse of the high beams posed a "real, imminent risk to the public," we find the trooper's actions unreasonable given the ambiguous threat, if any, created by defendant. While we decline this opportunity to limit the community caretaking exception to situations where the facts objectively indicate a danger to the driver or passengers of the vehicle, rather than the general public, we likewise decline to extend the doctrine to situations such as this where a defendant's actions might pose some danger to some member of the motoring public at some indefinite time in the future. See State v. Pinkham, 565 A.2d 318, 320 (Me.1989) (Glassman, J., dissenting) ("I cannot agree . . . that a possible future risk to the safety of persons or property warrants the intrusion of a present stop of a motor vehicle."). Furthermore, we note that in the jurisdictions *1002 where misuse of high-beam headlights has been upheld as proper justification to conduct a motor-vehicle stop, courts have relied on their state's laws regulating headlight usage rather than on any potential threat to the general public safety. See, e.g., State v. Kimball, 141 Idaho 489, 111 P.3d 625, 628 (Ct.App., 2005) (finding reasonable, articulable suspicion for stop where state law requires drivers to dim lights within 500 feet of approaching an oncoming vehicle); State v. Mullins, No.2006-CA-00019, 2006 WL 2588770 (Ohio Ct.App. Sept.8, 2006) (upholding stop where state law requires nighttime drivers to use distribution of light or composite beam such that glare is not directed into the eyes of oncoming drivers). If we adopt the State's position, that it is objectively reasonable to believe that the general motoring public is sufficiently endangered by a one-time premature activation of high-beam headlights to justify a motor-vehicle stop, the community caretaking exception will likely "devour the requirement of reasonable articulable suspicion" a result that we cautioned against in Burgess, 163 Vt. at 262, 657 A.2d at 204. Thus, we hold that defendant's Article 11 right to be free from unreasonable seizures was violated by the motor-vehicle stop, and affirm the trial court's decision granting defendant's motion to suppress and entering judgment for defendant in the civil suspension proceeding.
Affirmed.