2008 VT 23

**STATE of Vermont v. Douglas EDWARDS**

[945 A.2d 915]

No. 07-090

*Pearson,* J.

¶ 1. March 5, 2008. Defendant appeals the trial court's denial of his motion to suppress the fruits of the stop which led to his arrest for driving with license suspended (DLS) and a third offense of driving under the influence of alcohol (DUI third). Defendant contends that he was stopped by the police officer without reasonable suspicion of criminal wrongdoing and without circumstances justifying a stop for public safety, or "community caretaking," purposes. The stop occurred when an officer of the Stowe Police Department noticed defendant's vehicle parked just off the southbound side of Route 100 at 11:30 p.m. Defendant's automobile was half on the pavement, although past the right fog line, and half off the road. The car was parked before a slight curve and a slight narrowing of the road by guardrails, and hampered the visibility of other vehicles traveling south. Defendant was parked so

close to the fog line that a person speaking to the driver through the driver's-side window would have to stand in the traveled portion of the road. The car's engine was turned off, but its headlights were on and the right directional light was flashing.

¶ 2. Thinking the car was disabled, the officer pulled in behind defendant's vehicle, switching on his blue lights for safety. He approached defendant and asked if he was all right, and why he was pulled over. Defendant responded that he had stopped to let other cars go by, as the oncoming "lights were too bright." The officer asked defendant to produce his license, registration and insurance card. After more than two minutes of fumbling around for these items, defendant admitted that he had no license and that he had lost it. Upon radioing his department, the officer learned that defendant's license was suspended. While arresting defendant for DLS, the officer made observations that led to defendant's subsequent processing for DUI third.

¶ 3. Defendant moved to suppress the evidence supporting his subsequent citations for DLS and DUI third based on the officer's lack of suspicion of any violation at the time of the stop, and absent any apparent reason to think the driver needed assistance. The trial court denied, and refused to reconsider, defendant's motion. This appeal followed. Given the State's concession that activation of the blue lights by the officer constituted a stop, and that the officer lacked reasonable suspicion of illegal conduct, the sole question on appeal is whether this police intrusion was justified under the community-caretaking doctrine, which allows police intervention in response to apparent distress or risk to safety. Because defendant challenges only the trial court's legal conclusions regarding the applicability of the community caretaking doctrine, our review is de novo. *State v. St. Martin*, 2007 VT 20, ¶ 5, 181 Vt. 581, 925 A.2d 999 (mem.).

¶ 4. The parameters of permissible "community caretaking" action by police are discussed in a line of cases beginning with *State v. Marcello*, 157 Vt. 657, 599 A.2d 357 (1991) (mem.). In *Marcello*, a concerned motorist notified a state trooper that there was "something wrong" with another driver, leading the trooper to stop that driver and discover evidence of DUI. We concluded that this stop was justified as within the public-caretaking function of the police. While generally the Fourth Amendment requires that police have, at minimum, reasonable suspicion that criminal activity is afoot before they may effect a seizure, we held that police officers may stop citizens without meeting the reasonable-suspicion threshold in order "to carry out community caretaking functions to enhance public safety," provided the officer can point to "specific and articulable facts" regarding a potential danger to the motorist or community. *Id.* at 658, 599 A.2d at 358 (quotations omitted).

¶ 5. We have applied the "specific and articulable facts" test in a number of subsequent cases, establishing examples of when a stop may, or may not, be justified under the community-caretaking doctrine. Such stops are proper when officers can particularly describe a "perceived emergency or [an] indication of imminent threat to specific individuals" before effecting the stop. *St. Martin*, 2007 VT 20, ¶ 6; see also *State v. Campbell*, 173 Vt. 575, 575-76, 789 A.2d 926, 927-28 (2001) (mem.) (it was proper for officer to approach vehicle pulled off on side of the road after it flashed its lights at his marked police cruiser as he drove by at 2 a.m. on a stormy night). Stops are not justified, however, when the officer, objectively, has "no indication that anything [i]s wrong" with the motorist or vehicle. *State v. Burgess*, 163 Vt. 259, 260, 657 A.2d 202, 202 (1995); see also *St. Martin*, 2007 VT 20, ¶ 7 (stopping defendant not justified when he activated high-beam head-

lights while passing a state trooper traveling in the opposite direction); *State v. Jestice*, 2004 VT 65, ¶ 2, 177 Vt. 513, 861 A.2d 1060 (mem.) (officer not justified in blocking the car of a couple parked in a trailhead lot at 2 a.m. when nothing suggested they were in trouble).

¶ 6. Here, the officer articulated specific facts to justify the stop on grounds of community caretaking. As described by the officer and found by the trial court, defendant's car was pulled over, barely off the travel lane of the highway, late at night, and near a curve preceding a narrowing of the road such that it presented a potential hazard to other motorists negotiating the curve in the dark. The location of defendant's car was abnormal and unsafe. These facts were sufficient to lead an officer "to reasonably believe the defendant was in need of assistance." *Campbell*, 173 Vt. at 576, 789 A.2d at 928.

¶ 7. Defendant cites *State v. Burgess* for the proposition that a car merely out of place at night with its lights on does not amount to a reasonable indicator that the car is disabled, or that its operator is in distress. 163 Vt. at 262, 657 A.2d at 203-04. The circumstances in *Burgess*, however, where the auto in question was legally parked in a designated pull-off area with its engine running and its parking lights on, lie in sharp contrast to the situation presented here. In addition to presenting the hazard already described, defendant's car was not in a proper pull-off or parking area, but was half-on and half-off the pavement. Defendant's lights were on and his signal was flashing, but his engine was off. Such observations may not necessarily confirm distress, but did supply "some reasonable basis," found lacking in *Burgess*, "on which to make the inquiry" as to whether the operator needed assistance. *Id.* at 260, 657 A.2d at 203.

¶ 8. Defendant also argues that the State must establish that community caretaking was not just a pretext for an otherwise unconstitutional intrusion by proving the officer's subjective intent to provide emergency aid, and not to investigate crime. This Court has held that warrantless entry of a premises based on an officer's claim of necessity for emergency aid must be supported by a subjective and primary motive to assist the victim. See *State v. Mountford*, 171 Vt. 487, 490-91, 769 A.2d 639, 644-45 (2000) (adopting approach from *People v. Mitchell*, 347 . N.E.2d 607, 609 (N.Y. 1976)). This decision was abrogated by *Brigham City v. Stuart*, 547 U.S. 398 (2006). We have not incorporated that element into our test for motor-vehicle stops justified by community caretaking, however, and we decline to do so here.[1] Since *Marcello*, the test for the community caretaking exception for a traffic stop has consistently turned on whether there were specific and articulable facts objectively leading the officer to reasonably believe that the defendant was in distress or needed assistance, or reasonably prompted an inquiry in that regard. See *St. Martin*, 2007 VT 20, ¶ 6; *Jestice*, 2004 VT 65, ¶ 10; *Campbell*, 173 Vt. at 576, 789 A.2d at 928;[2] *Burgess*, 163 Vt. at 262, 657 A.2d at 203-04; *Marcello*, 157 Vt. at 658, 599 A.2d at 358. In any event, there is no

---

[1] As indicated in *Mountford*, "[w]e prefer to view the emergency assistance exception as separate from the community caretaking exception, although both involve the police operating outside of a criminal law enforcement role." 171 Vt. at 490 n*, 769 A.2d at 644 n*.

[2] Although *Campbell* recited the observation in *Mountford* that community caretaking stops can be distinguished by police motivation to aid victims rather than investigate crime, the holding of the case depended entirely upon "specific and articulable facts" objectively justifying the officer's reasonable belief that defendant needed assistance. 173 Vt. at 576, 789 A.2d at 928 (quotations omitted).

concern for pretext here, given the trial court's explicit findings — not disputed by defendant — that the officer pulled in behind defendant's car because he thought the car might be disabled or its driver in distress.

*Affirmed.*