CONNER, J.
Melissa Lee May entered a plea of no contest to two counts of withholding information regarding previous prescriptions from a practitioner (commonly known as doctor shopping) and a separate violation of probation, reserving her right to appeal the denial of her motion to suppress. May claims the trial court erred in denying the motion because the officer who conducted the traffic stop, which resulted in May’s arrest, lacked reasonable suspicion to stop *833 the vehicle in which she was traveling. We affirm.
A detective of the Hollywood Police Department assigned to work with a DEA unit was conducting surveillance in the parking lot of a pain clinic under investigation by the DEA. At that time the detective had at least three and a half years of training and experience conducting investigations of “pharmaceutical crimes.” The detective observed May along with a co-defendant exit the front door of the clinic. She did not see either person carrying anything at that time.
The co-defendant got into the front passenger seat and May got into the rear passenger seat of a waiting vehicle driven by a third person. The vehicle pulled out of the parking lot and drove away, and the detective followed. Eventually, the detective pulled alongside the vehicle and observed an amber prescription bottle being passed from the front center console area to the rear where May was seated.[1] The detective then made contact with another officer, who effectuated a traffic stop for a brake light violation.[2] The State stipulated at the suppression hearing that the traffic stop for a brake light violation was not valid. Although the vehicle was stopped for a brake light violation, the violation was not technically sufficient for a ticket to be issued.[3] Thus, the State agreed the issue to be litigated at the suppression hearing was the validity of an investigatory stop.
In addition to the above facts, at the suppression hearing the detective testified that from her training and experience, a lot of narcotics violations by hand-to-hand transactions or “sharing of pills” typically occur in the parking lots of pain clinics. She also testified that the pain clinic under investigation was a “cash only” operation, which is the situation with a majority of pain clinics. She further testified that it is common to observe people leaving pain clinics engage in conduct she referred to as “sharing of pills,” in which people “divvy up the proceeds of what they received from the doctor.” She explained that often the drugs obtained by the patient leaving the pain clinic are given to the driver of the vehicle as payment for driving the patient to the clinic. Frequently, the situation is a “sponsorship” arrangement whereby a person in the vehicle supplies the cash to purchase the drugs. In return, for supplying the cash, the sponsor is given some of the drugs. The detective also testified: “But the fact that the pill bottle goes around was suspicious, especially working diversion cases and these types of crimes, people don’t share their prescription bottle.”
The detective was the only witness to testify at the suppression hearing. The trial court found that the detective’s testimony was credible and the officer had reasonable suspicion to make an investigatory stop. The motion to suppress was denied.
May relies primarily on Benemerito v. State, 29 So.3d 367 (Fla. 4th DCA 2010), for reversal. In that case, an experienced narcotics officer was conducting *834 surveillance of a Walgreens parking lot in which a number of drug arrests previously had been made. A truck entered the lot, and then the defendant drove into the lot and parked beside the truck. The driver of the truck entered the back seat of the defendant’s vehicle, extended his hand toward the driver, exited the vehicle, and drove off. The officer could not see what was in the defendant’s hand, but nonetheless stopped the defendant on the suspicion that he had purchased drugs.
The circuit court denied the motion to suppress the evidence resulting from the stop. Id. at 368. This court reversed because the officer did not have reasonable suspicion to stop the defendant. The officer “witnessed only silhouettes in a car and the movement of one person’s arm ... [h]e ... did not see any drugs or money.” Id. at 370. May points out that in this case, the detective did not see any drugs or money. Although the detective saw a prescription bottle change hands, May argues the detective could not see whether the occupants opened the bottle, put anything in their mouths, or took any pills out of the bottle.
As we observed in Santiago v. State, 941 So.2d 1277, 1279 (Fla. 4th DCA 2006),
Diverse facts have been recognized as useful in deciding whether reasonable suspicion exists, including: “[t]he time; the day of the week, the location; the physical appearance of the suspect; the behavior of the suspect; the appearance and manner of operation of any vehicle involved; anything incongruous or unusual in the situation as interpreted in the light of the officer’s knowledge.”
(quoting State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978)). In Santiago we went on to say that it was not neees-sary that an officer actually observe drugs change hands to establish reasonable suspicion. Instead, an officer may rely on other circumstances, such as “whether the officer can see either drugs or money being transferred, the officer’s narcotics experience, the reputation of the location for drug transactions, the extent of the period of surveillance, and the history of previous multiple arrests from that site.” Id. at 1279.
A police officer may stop a person for the purpose of investigating possible criminal behavior if the officer has reasonable suspicion that the person has committed, is committing, or is about to commit a crime. State v. Davis, 849 So.2d 398 (Fla. 4th DCA 2003). “In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity.” Popple v. State, 626 So.2d 185 (Fla.1993). “A founded suspicion is one which has a factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge and experience.” Davis, 849 So.2d at 400 (citing Stevens, 354 So.2d at 1247 (emphasis added).[4]
Section 893.13(l)(a), Florida Statutes (2009), makes it unlawful for any person to deliver a controlled substance to a person unless the delivery is pursuant to a valid prescription. Section 893.13(6)(a), Florida Statutes (2009), makes it unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription. Except, arguably speaking, the situation of a parent giving medicine to a child, a crime is committed when Citizen A gives Citizen B a *835 prescription medication and the delivery is not pursuant to a valid prescription.
Our prior statements in Beneméri-to, Santiago, and Davis lead us to conclude that in determining whether an officer has a reasonable suspicion to conduct an investigatory stop, some deference should be given to the officer’s perspective and the officer’s training and experience.[5] What may appear to be innocent conduct to the average citizen, who is unaware of how drug crimes are committed, may reasonably appear suspicious to an officer. In this case, the officer testified about a pattern of illegal conduct (“sharing of pills”) which the officer learned through observation and training occurs with regularity at or near cash-only pain clinics. “Sharing of pills” is illegal drug activity that includes seemingly innocent behavior to the average citizen (passing a pill bottle to another person). In the context of the facts known to the officer, passing a prescription bottle around in a vehicle is consistent with illegal “sharing of pills.” “Sharing of pills” behavior is a very different illegal drug activity than the hand-to-hand sales transactions involved in Benemérito and Santiago,[6] As we said in Santiago, observation of drugs is not necessary in the context of hand-to-hand sales of drugs. In the context of “sharing of pills,” it seems to us that observation of the drugs themselves is likewise not necessary and observation of passing a prescription pill bottle is sufficient.
The fact that May emerged from a cash-only pain clinic[7] already under DEA surveillance, got into a parked ear being driven by a third person, and was then handed a prescription pill bottle constituted reasonable suspicion in the mind of an experienced detective, who had witnessed other drug transactions many times at pain clinic locations. Although an isolated incident of someone passing a pill bottle around while leaving a pain clinic may be considered innocent activity by the average citizen, the totality of the circumstances, observed in light of the detective’s experience, established reasonable suspicion needed to justify the traffic stop.

Affirmed.

MAY, C.J., and DAMOORGIAN, J, concur.

. The detective testified she was not only able to observe an amber container, but also a label on the container, which gave the container the appearance of a prescription bottle.

. The detective testified that when investigating pain clinics, law enforcement uses a traffic stop to hide the fact that the pain clinic is under surveillance from the vehicle occupants. The detective testified that pain clinics change their mode of operation whenever they become aware of being watched.

.The middle brake light was not functioning, but the other two brake lights were functioning. See § 316.222, Fla. Stat. (2009).

. In Origi v. State, 912 So.2d 69 (Fla. 4th DCA 2005), we equated "founded suspicion” with "reasonable suspicion” by quoting the same language in Davis.

. We also point out that Benemérito, Santiago, and Davis all dealt with hand-to-hand sales of drags, not illegal “sharing of pills.”

. When pills are given to the driver as payment for providing transportation, no money is exchanged, when pills are given for supplying cash to purchase the pills, there is a temporal break between the delivery of money and the delivery of pills.

.Our analysis relies in part on the unique characteristic of pain clinics which dispense drags on a cash only basis. As we have said, the characteristics of a location is a factor an officer can consider in evaluating suspicious criminal conduct.