2014 VT 131

# State of Vermont v. Matthew Hinton

[112 A.3d 770]

No. 14-163

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morse, J. (Ret.), Specially Assigned

Opinion Filed December 12, 2014

*Gregory Nagurney*, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

*Jessica Burke* of *Burke Law, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals from the civil suspension of his driver's license and his conditional guilty plea to driving under the influence (DUI). He argues that the police lacked reasonable grounds to stop him, and thus, the court should have granted his motion to suppress and dismiss. We affirm.

¶ 2. The trial court made the following findings, none of which defendant challenges on appeal. Around 7 p.m. on December 28, 2013, a police officer responded to a report of a downed tree on Osgood Hill Road in the Town of Essex. The tree had broken off about fifteen feet above the ground and was partially blocking the roadway. The officer considered the tree a danger to passing motorists. He could not remove the tree himself and radioed the highway crew for help.

¶ 3. While waiting for the highway crew to arrive, the officer drove one or two miles to the south end of Osgood Hill Road to warn drivers about the blockage and to inform northbound drivers of an alternate route via Route 128. The officer parked approximately 200 yards north of the intersection of Osgood Hill Road and Route 128, facing north. When a car approached, the officer would activate his blue lights and speak to the driver. He would advise the driver to take the alternate route if the driver's

destination was north of 201 Osgood Hill Road. The officer spoke to about four drivers before encountering defendant.

¶ 4. Shortly after 8 p.m., the officer saw the headlights of defendant's truck approaching his position, and he activated his blue lights to signal defendant to stop. Defendant stopped about 150 feet from the police cruiser. The officer motioned defendant to approach but defendant instead pulled his truck onto the right shoulder. The officer thought defendant might be confused about the situation, and he approached the truck to explain what was going on.

¶ 5. When the officer told defendant about the downed tree, defendant offered to remove the tree himself with a hatchet. The officer explained to defendant why this was impractical. Defendant continued to insist that he could remove the tree. During the conversation, the officer noticed that defendant's eyes were blood-shot and watery. Additionally, defendant seemed confused by the officer's explanation about taking an alternate route. The officer also observed the bottom of what appeared to be a wine or liquor bottle lying on the truck's passenger seat. Defendant tried to hide the bottle by moving a paper bag over it. When the officer asked defendant about the bottle, defendant showed him a different bottle. Defendant denied to the officer that he had been drinking. At that point, the officer asked defendant to exit his truck and perform field-sobriety exercises, which led in turn to processing defendant for DUI.

¶ 6. Based on these facts, the court denied defendant's motion to suppress. It concluded that, at the time of his encounter with defendant, the officer was performing a community-service function commonly expected of police officers. It found that the officer activated his lights and approached defendant's car, not to investigate a crime, but to advise defendant of an obstruction in the road and to inform him of an alternate route. It concluded that the officer reasonably assumed that defendant was confused by the situation and further that the officer's observations suggesting that defendant was impaired justified further investigation. Following the court's ruling, defendant entered a conditional guilty plea to DUI. This appeal followed.

¶ 7. Defendant argues on appeal that the officer made a "stop" — a "seizure" under the Fourth Amendment — and that the stop was not justified on any grounds, including the community-caretaking doctrine. Defendant maintains that, for the community-

caretaking doctrine to apply, the State must show that there was an emergency, that he was in distress, or that he otherwise needed assistance. He argues that he exhibited no indicia of distress, and that he was not in any imminent danger.

¶ 8. "On appeal of a motion to suppress, we review the trial court's legal conclusions de novo and its factual findings for clear error." *State v. Button*, 2013 VT 92, ¶ 8, 195 Vt. 65, 86 A.3d 1001 (quotation omitted). Because the defendant challenges only the trial court's legal conclusion, our review here is de novo. We hold that, assuming that a stop occurred, the officer's actions were justified under the community-caretaking doctrine and did not violate the Fourth Amendment. The motion to suppress was therefore properly denied.

¶ 9. ■ Generally speaking, a police officer must have "reasonable and articulable suspicion that someone is engaged in criminal activity, or is violating a motor vehicle law, before conducting an investigatory stop." *State v. Marcello*, 157 Vt. 657, 657-58, 599 A.2d 357, 358 (1991) (mem.). Under some circumstances, however, a police officer without reasonable suspicion of criminal activity may "intrude on a person's privacy to carry out 'community caretaking' functions to enhance public safety." *Id.* at 658, 599 A.2d at 358. "The distinguishing feature of a stop and seizure under the community caretaking exception is that it is generated from a desire to aid victims rather than investigate criminals." *State v. Campbell*, 173 Vt. 575, 576, 789 A.2d 926, 928 (2001) (mem.) (quotation omitted). "The key to such constitutionally permissible police action is reasonableness." *Marcello*, 157 Vt. at 658, 599 A.2d at 358.

¶ 10. We recognized in *Marcello* that "the police have an essential role as public servants to assist those in distress and to maintain and foster public safety." *Id.* (quotation omitted). Given this, we found it reasonable for a police officer to stop a motorist after being told by another motorist that "there's something wrong with that [driver]." *Id.* at 657-58, 599 A.2d at 358. We found that this "excited utterance" provided the officer with "specific and articulable facts" sufficient to justify a stop for safety reasons. *Id.* at 658, 599 A.2d at 358. Because the officer did not know the nature of the defendant's problem, which might have involved serious illness or physical injury, "[t]he most reasonable course of action . . . was to immediately stop the vehicles to determine if assistance was needed." *Id.*

¶ 11. We have considered the community-caretaking doctrine in numerous cases since *Marcello*, although none involve facts similar to those presented here. See, e.g., *Button*, 2013 VT 92, ¶¶ 2-5, 10-18 (concluding, in "close case," that stop was not justified under community-caretaking doctrine where officer simply decided to follow defendant, who was driving on rural road late at night, and then approached defendant's car to see if defendant was okay less than a minute after defendant pulled to side of road); *State v. Edwards*, 2008 VT 23, ¶ 6, 183 Vt. 584, 945 A.2d 915 (mem.) (officer could reasonably believe that defendant needed assistance based on abnormal and unsafe location of defendant's car, which was parked barely off travel lane of highway, late at night, and near curve); *State v. St. Martin*, 2007 VT 20, ¶¶ 7-8, 181 Vt. 581, 925 A.2d 999 (mem.) (defendant's momentary misuse of high-beam headlights did not pose "real, imminent risk to the public" sufficient to justify stop); *Campbell*, 173 Vt. at 575-76, 789 A.2d at 927-28 (officer reasonably believed that car's occupants were seeking his assistance where vehicle flashed its lights at officer at 2 a.m. on stormy night and defendant's car was parked in information booth parking lot); *State v. Burgess*, 163 Vt. 259, 260, 262, 657 A.2d 202, 202-04 (1995) (stop not justified where automobile was legally parked in designated pull-off area with engine running and parking lights on). In all of our cases, the touchstone has been the "reasonableness" of the officer's actions. See *Edwards*, 2008 VT 23, ¶ 8 ("Since *Marcello*, the test for the community caretaking exception for a traffic stop has consistently turned on whether there were specific and articulable facts objectively leading the officer to reasonably believe that the defendant was in distress or needed assistance, or reasonably prompted an inquiry in that regard." (citing cases)).

¶ 12. Defendant argues that like the defendant in *Button*, he was merely sitting in his car and not exhibiting any indicia of distress when the officer made the unreasonable decision to approach his vehicle. Defendant has taken discussions in our cases that describe elements of community caretaking applicable to the specific facts of the cases and generalized that the exception applies only when the defendant is in need of assistance. He fails to appreciate the application of the doctrine to "community" caretaking, that is, assisting the general populace. Necessarily, the doctrine applies whenever an officer is reasonably and legitimately exercising a community-caretaking function, and not a criminal

investigation, and happens to obtain evidence of a crime. Thus, defendant's argument ignores all the surrounding circumstances of this case and the reasons for the officer's actions as found by the trial court. As discussed in greater detail below, when those circumstances are taken into account, it is evident that the officer's decision to approach defendant's car and engage defendant in conversation was eminently reasonable.

¶ 13. The United States District Court for the District of Vermont reached the same conclusion based on similar facts in *United States v. Touzel*, 409 F. Supp. 2d 511 (D. Vt. 2006). In that case, two police officers were directing traffic at the scene of a late-night motor vehicle accident in a rural area. The road was icy and blocked by downed power lines. One officer parked his cruiser diagonally across the highway to stop traffic and prevent motorists from driving through the downed lines. The other officer was some distance away on the other side of the accident site. The defendant drove up to one of the officers, who signaled him to stop and advised him of the accident. The defendant appeared confused during his conversation with police. *Id.* at 515. The defendant later consented to a search of his vehicle, where drugs were discovered. *Id.* at 516.

¶ 14. ■ The defendant filed a motion to suppress and dismiss, arguing that the officer committed an unreasonable seizure by stopping and questioning him upon his arrival at the accident scene. *Id.* at 518. The court denied the motion. It found that "[m]anagement of traffic at the scene of a motor vehicle accident falls within an officer's community caretaking function." *Id.* at 519. Thus, the "temporary detention of a driver is reasonable within the meaning of the Fourth Amendment if it is necessary to protect public safety." *Id.*; see also *United States v. King*, 990 F.2d 1552, 1560-61 (10th Cir. 1993) (holding that officer at accident scene was justified in approaching defendants' car and could have briefly detained defendants to inform driver of hazardous conditions and advise him to cease honking his horn).

¶ 15. The federal court found the officer's decision "to stop [the defendant]'s car, warn him of the accident, and direct him to turn around was unquestionably a valid exercise of the community caretaking function." *Touzel*, 409 F. Supp. 2d at 519. In light of the hazardous road conditions, the court found the officer's action "necessary for [the defendant's] safety and for that of others on

the road." *Id.* It found the officer's inquiries into the defendant's route and destination equally within the scope of the community-caretaking function because the accident had closed a major highway, and it was reasonable to offer motorists assistance regarding alternate routes. "On a dark, icy night," the court explained, "such assistance might well be necessary not only for motorists' convenience, but also their safety." *Id.* The fact that the officer acted in a similar fashion for at least one other motorist reinforced the court's conclusion that the officer's initial interaction with the defendant was an exercise of community caretaking. *Id.* The court thus concluded that the officer did not violate the defendant's rights by stopping his car, engaging him in conversation about his travel plans, and following up with additional questioning when the defendant's answers aroused suspicion.

¶ 16. ■ We reach the same conclusion here. The officer parked his police cruiser to warn approaching motorists of a hazard in the road. The trial court found that in doing so, the officer was acting to perform "a non-investigatory community service." Thus, in the words of *Cady v. Dombrowski*, the leading decision from the United States Supreme Court, the officer was exercising functions "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." 413 U.S. 433, 441 (1973). The officer had warned four other motorists before encountering defendant, and, in fact, warned others while talking with defendant. When defendant did not pull forward so the officer could talk with him, the officer reasonably concluded that defendant was confused about the situation. He approached defendant's truck to warn him of the danger and to offer an alternative route. Under these circumstances, it was objectively reasonable for the officer to inquire of defendant "if assistance was needed." *Marcello*, 157 Vt. at 658, 599 A.2d at 358.

¶ 17. ■ Defendant criticizes the officer's method of warning and diverting motorists, arguing that the officer should have remained by the downed tree and directed motorists to turn around without stopping them or talking with them. As we stated recently in *Button*, "[i]t is important to respect law enforcement officers' judgment in their exercise of the community caretaking function." 2013 VT 92, ¶ 19. In short, we will not second-guess how an officer chooses to respond to an emergency situation if, as here, the response is reasonable.

¶ 18. The trial court properly denied the motion to suppress and dismiss.

*Affirmed.*