NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 13

No. 2018-092

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Nichole L. Dubaniewicz | January Term, 2019 |

Katherine A. Hayes, J. (motions to suppress and dismiss); Michael R. Kainen, J. (final judgment)

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT:  Reiber, C.J., Skoglund, Robinson, and Eaton, JJ., and Pearson, Supr. J. (Ret.),
          Specially Assigned


¶ 1.    **SKOGLUND, J.**    Defendant, Nichole Dubaniewicz, appeals her conviction for one count of possession of one gram or more of heroin, under 18 V.S.A. § 4233(a)(3).  We find that the trial court erred in denying defendant's motion to suppress, and therefore we reverse.

¶ 2.    Based on the evidence developed at the hearing on defendant's motion to suppress and to dismiss, the following series of events was detailed.  On December 4, 2015, a Vermont State Police Detective Sergeant was driving northbound on I-91 in his unmarked cruiser in the Town of Guilford when he clocked a car driving southbound on the interstate at eighty-three miles

per hour.  Because the car was speeding, the sergeant turned around, pulled the car over, and approached the passenger's side.  There were two individuals in the car—the driver was J.S., and the passenger was defendant.  During the stop, the sergeant noticed that both defendant and J.S. appeared to be pale and withdrawn, and that they were wearing heavy winter coats and hats.  Further, he saw what he believed to be intravenous track marks on the back of defendant's hands and a heavy, rapid carotid pulse on the side of defendant's neck.  These observations led him to believe that J.S. and defendant might have been "dope sick."[1]

¶ 3.    Although J.S. was the driver and registered owner of the car, defendant did most of the talking during the stop.  Defendant told the sergeant that she and J.S. were driving to a Big Y grocery store in Massachusetts because they liked the cakes the store sold.  After checking J.S.'s driver's license and registration, which showed him to be a New Hampshire resident, the sergeant issued J.S. a written warning for speeding and for having one brake light out and released the car from the stop.

¶ 4.    Based on his observations of J.S. and defendant during the stop, which led him to suspect they were "dope sick," and his awareness of a recent trend in drug transactions occurring in Greenfield, Massachusetts, the sergeant took further investigative steps.  He determined that the nearest Big Y grocery store was in Greenfield and calculated what time he could expect to see the car on its return from this Big Y grocery store.

¶ 5.    The sergeant also contacted a police officer with whom he had conducted several previous drug investigations.  This police officer referred the sergeant to a second police officer.  This second officer was familiar with both J.S. and defendant and knew that they were associated

---

[1] "Dope sick" is a colloquial term used to describe someone who is in withdrawal from narcotics.

with each other. Further, the second officer told the sergeant that he had interviewed defendant the previous July and that defendant had told the officer that she was addicted to heroin. The second officer also told the sergeant that there were rumors that J.S. was involved in distributing heroin and that he believed that J.S. had recently been charged with a drug-related offense in Newport, New Hampshire. However, when the sergeant contacted the Newport Police Department, they did a record check and found no drug-activity arrests of J.S.

¶ 6. Around the estimated time the sergeant had calculated, he saw the same car traveling northbound on I-91. He caught up with the car, paced it, and noted that it was traveling at seventy-three miles per hour and was following the vehicle in front of it at an unsafe distance. He pulled the car over for a second time. This time, defendant was driving the car and J.S. was in the passenger seat. The sergeant observed that both parties appeared more comfortable, had shed their winter jackets, and now had constricted pupils. He again observed the alleged track marks on defendant's hands.

¶ 7. At that point in time, the sergeant asked defendant for her documents and ordered her to exit the vehicle and come back to his cruiser. While walking from the car to the cruiser, the sergeant observed defendant's mannerisms, ability to walk, dexterity, speech, and other physical displays that might indicate whether she was under the influence of a drug that would impact her ability to drive. He noticed no slurring of words and observed defendant had no trouble walking or understanding what he was saying to her. He did not ask her to perform any field sobriety tests. When questioned at the motion hearing why he did not ask defendant to perform any field sobriety tests, the sergeant explained that he saw no need: "Q: So to be clear, your observations from the moment she exited her vehicle to the moment she got into your vehicle did not warrant any further investigation as to whether she was under the influence. A: It didn't warrant having her go through

3

field sobriety testing." Further, at trial, the sergeant testified that there came a point when he and defendant were speaking in the cruiser that he "felt comfortable with [defendant] not being impaired."

¶ 8. While in the cruiser during the second stop, defendant told the sergeant that the grocery store did not have any cakes, that she lived with J.S. and a daughter, and that she was a para-educator at a Vermont school. She explained that she was not working that day because she had broken a tooth the night earlier and called in sick. The sergeant radioed for a canine unit to respond to the scene. He estimated that it took approximately forty minutes for the dog to arrive following the stop. Following canine investigative work which signaled the presence of drugs, the sergeant seized the car and got a search warrant. The car was towed back to the barracks, where it was searched. The sergeant found two coupons for Suboxone, a drug commonly used to treat opiate addition, in J.S.'s wallet. None of the keys provided by defendant and J.S. would open the glove box, so it was forced open, and suspected heroin was discovered. There were four bricks (a brick is a pack of fifty bags), one of which had been opened and was missing several bags. The suspected heroin was delivered to the Vermont Forensic Laboratory.

¶ 9. At the lab, the forensic chemist counted a total of 181 bags—fifty bags in each of the four bricks, except that one brick had an extra bag and one brick had been open and not all the bags were present. Twenty-six bags were randomly selected, tested, and found to contain heroin. The number of bags tested was consistent with a statistical-based sampling method, pursuant to which the chemist could say, with ninety-five percent confidence, that ninety percent of the 181 bags will contain heroin, assuming that all of them gave a positive response to the presumptive test for the presence of heroin, which they did. The twenty-six bags that were tested weighed a

4

total of 500 milligrams. The lightest bag weighed 12.4 milligrams, and the heaviest bag weighed 25.8 milligrams.

¶ 10. Prior to trial, both J.S. and defendant filed motions to suppress the results of the search of the car and to dismiss, arguing that: (1) the sergeant's exit order to defendant was unsupported by reasonable suspicion; (2) the forty-minute detention for the arrival of a canine unit was excessive; (3) the canine examination of the vehicle was unsupported by sufficient grounds; (4) the sergeant's detention of the car while he sought a warrant was improper; (5) there were significant and misleading omissions and errors in the affidavits in support of the warrant application; and (6) the affidavit did not provide probable cause for the issuance of the search warrant.

¶ 11. The court denied the suppression motions which were heard jointly. The trial court's factual findings are generally not challenged on appeal. The court stated that a reasonable suspicion that a defendant-driver may be under the influence of alcohol or another substance that impairs their ability to drive supports an exit order. It concluded that the sergeant's observation of defendant's constricted pupils, suspected track marks on her hands, and her change in affect from dull and withdrawn during the first stop to a more comfortable demeanor during the second stop supported his exit order in this case. The court noted the "implausibility" of defendant's motivation for traveling from New Hampshire to Greenfield, Massachusetts, combined with the information he had gathered from the police in New Hampshire, provided reasonable grounds to believe that defendant or J.S. "might have purchased drugs in Greenfield and still be in possession of them." The court also concluded that the forty-minute wait for the canine unit was not excessive or unreasonable and that the sergeant had a reasonable, articulable suspicion of drug activity when he subjected the car to a canine drug-odor scan.

¶ 12.   The case was tried to a jury.  At the close of evidence, the jury was instructed on the automobile presumption of possession when a regulated drug is found in the car, 18 V.S.A. 4221(b), the lesser-included felony offense of possession of more than 200 milligrams of heroin, and the lesser-included misdemeanor offense of possession of any amount of heroin.  The heroin itself was admitted as an exhibit, circulated among the jurors in the courtroom, and taken into the jury room during deliberation.  The jury returned a guilty verdict.

¶ 13.   On appeal, defendant argues that the sergeant had no reasonable suspicion to order her from the car, to expand the scope of the stop into a drug investigation, or to detain her while he waited for a canine unit to arrive, and therefore the trial court erred in denying her motion to suppress.[2]  We find the exit order was supported by the sergeant's reasonable suspicion that she was operating a motor vehicle while under the influence.  However, we find the extension of the detention was not supportable and reverse on this point.

¶ 14.   "Our review of a decision on a motion to suppress involves two steps."  State v. Cunningham, 2008 VT 43, ¶ 14, 183 Vt. 401, 954 A.2d 1290.  First, we review the trial court's factual findings for clear error, where "the court's finding[s] must be upheld unless there is no reasonable or credible evidence to support [them]."  State v. Weisler, 2011 VT 96, ¶ 6, 190 Vt. 344, 35 A.3d 970 (quotation omitted).  If the trial court's findings are not clearly erroneous, we

---

[2]   Because we reverse on other grounds, we do not address defendant's following arguments: (1) the permissive inference of knowing possession of a regulated drug by each and every person in the automobile at the time such drug was found is unconstitutional on its face because it allows a jury to find knowing possession of illegal drugs in circumstances which, if the defendant were not in an automobile, would be insufficient to establish possession; (2) the trial court violated defendant's due process rights by refusing to instruct the jury that the basic facts of her presence in the car when heroin was found should logically lead to the conclusion that she knowingly possessed the heroin; and (3) the trial court should have entered a judgment of acquittal because the prosecution provided no evidence to support a finding that defendant possessed one gram or more of heroin.

will then review the legal issues de novo." Cunningham, 2008 VT 43, ¶ 14. (quotation and alteration omitted).

¶ 15. This Court has held "that the test to determine whether an exit order was justified under Article 11 is whether the objective facts and circumstances would support a reasonable suspicion that the safety of the officer, or of others, was at risk or that a crime has been committed." State v. Sprague, 2003 VT 20, ¶ 16, 175 Vt. 123, 824 A.2d 539. And similarly, "[i]f, during the course of an investigative stop, an officer gathers additional information providing reasonable suspicion that some other criminal activity is afoot, the officer may extend the detention to investigate that activity." State v. Winters, 2015 VT 116, ¶ 14, 200 Vt. 296, 131 A.3d 186. When conducting both analyses, this Court looks to the totality of the circumstances. State v. Manning, 2015 VT 124, ¶ 14, 200 Vt. 423, 132 A.3d 716. The inquiry is objective, and we will "not countenance a seizure based on luck and hunch." Winters, 2015 VT 116, ¶¶ 14, 27 (quotation omitted).

¶ 16. First, the trial court correctly concluded that the sergeant had a reasonable suspicion to order defendant from her car. The sergeant testified, and trial court found, that at the time of the exit order, the sergeant had noted that defendant had constricted pupils, even though it was an overcast day, and that she had alleged track marks on the back on her hands. Further, the sergeant testified, and the trial court found, that he had observed an overt shift in her affect from the first stop to the second stop—changing from dull, withdrawn, and showing symptoms of "dope sickness" to more comfortable and no longer withdrawn or sick. The trial court concluded that based on these facts, in combination with "the implausibility of . . . defendant's motivation for traveling from New Hampshire to Greenfield"—to get cake—the sergeant had legitimate

7

reasonable suspicion that defendant was potentially under the influence of heroin, which impaired her ability to drive, and therefore his exit order was justified.

¶ 17. We agree. The trial court's findings are supported by the record, and thus not clearly erroneous. And, while "none of these factors viewed in isolation could form the basis for reasonable suspicion, . . . [l]ooking at the circumstances as a whole, particularly through the lens of the [sergeant]'s experience in law enforcement," the sergeant had reasonable suspicion to believe that defendant was under the influence while driving. Manning, 2015 VT 124, ¶ 16 (citation omitted). The sergeant is an experienced law enforcement officer who has led drug investigations, attended trainings and continuing education relating to criminal drug activity and investigations, and instructed fellow officers in trainings regarding basic drug identification and investigation. Despite defendant's assertion that the sergeant merely "offered his lay observations," the facts here meet the requirement of "an objective circumstance that would cause a reasonable officer to believe [an exit order] was necessary to protect the officer's, or another's, safety or to investigate a suspected crime." Sprague, 2003 VT 20, ¶ 20.

¶ 18. "If, during the course of an investigative stop, an officer gathers additional information providing reasonable suspicion that some other criminal activity is afoot, the officer may extend the detention to investigate that activity." Winters, 2015 VT 116, ¶ 14. Here, we cannot agree with the trial court's conclusion that the sergeant had a reasonable suspicion to expand the scope of the stop into a drug investigation, for he gained no more information after the exit order that would have justified extending his investigation from a potential DUI traffic stop to a drug investigation. The sergeant testified that, after having defendant exit the vehicle and walk back to his cruiser, he did not believe any field-sobriety testing was warranted. At trial, he testified that after having her exit the vehicle and speak with him in his cruiser, he was not concerned that

8

she was operating impaired. Therefore, the continuation of the traffic stop and expansion into a drug investigation required further evidence developed during the roadside investigation to support a reasonable suspicion of that particular type of illegal activity, beyond the possibility that defendant was driving under the influence. We find there was insufficient evidence on this point— the sergeant did not mention during any of his testimony, at the suppression hearing or at trial, any objective factual basis to support his suspicion that additional drugs would likely be found in the vehicle or in defendant's possession.[3] Therefore, the evidence gathered past this point should have been suppressed.

¶ 19. Because all evidence gathered after the sergeant determined that defendant was not operating under the influence should have been suppressed, including all of the heroin discovered, we reverse defendant's conviction of one count of possession of one gram or more of heroin, under 18 V.S.A. § 4233(a)(3).

Reversed.

FOR THE COURT:

_____
Associate Justice

---

[3] The sergeant's information from another officer that defendant was "believed" to be involved in drug activity turned out to be incorrect.

9